I think that the court consolidated both the cases, Strange and Brown. Mr. Brown, both the issues are the same, both of the cases. The thing you do is you mess with your little human part, basically. I get it, I get it. You probably first find the court for a lot of argument, you come for a lot of argument, and then you give the court some good news. In C.D.P., the thing is argument. The constitutionality of the department, the thing is argument. I consulted my region board last night, and it was determined that I was not going to be a lawyer because of that particular issue. But it still meets some issues that are before the court. I wonder if we'll look at the worldwide court on the branch of oral argument. Because we ordinarily have argument, unless there's a reason why not. We don't. We're not a court that grants oral argument. But there's a good reason to grant oral argument in this case, because... Well, you don't need a reason to get it when you're here. You know, it's like, well, this is free argument. Basically, our worldwide argument here is, we're backless tests on the long line of cases that begin with Coe, Booker, Gall, and Reary. Backless test tells us a specific holding of a mark is to be guided by assumptions that lead to vagueness challenges under the due process law. And as long as you're in the statutory range, it says it's not going for any vagueness. This is the problem here in this particular case. In this particular case, both cases involved people in the trunk of vehicles. Maybe for 10 minutes, maybe for 15 minutes. And the district courts, without much discussion, found that this involved a 16-level increase because it included a substantial risk under the guidelines. Well, isn't that true, that under the guidelines, it does represent a substantial risk? The application of 5 to that guideline specifically refers to someone being transported in a trunk. You know, my answer here, first of all, you have a past case thing, but the best case in itself is that, you know, you look back at the complete argument. But backless tells us that the guidelines are becoming less and less important because the guidelines... I'm sorry, the science question. Do you have a note on whether the application note was an effect of the time of the prenotation? Yes. Is it? The application note has been, apparently, actually an effect because of the sensitivity of the guidelines, say. But the courts have trouble with those particular bad application notes and there are a series of cases outside of the 15-point permit range. That's what you're asking us to do with the system with Bernardo? Yes. Bernardo, the court indicated that you would look at the comments. Backless tells us the guidelines are becoming more and more less important. And now, because in the trunk, it's not because of the passage of time, it's because of the comments. Procedurally, you're required to find the guideline range, correct? Yes. So you have to look to find the guideline range first, whether you apply the guideline range or depart for it. Indeed, as the judge did here. And there's something about probation, correct? That's correct. Paul tells us that the case defense would have to find the guideline range. So the court found the guideline range to include this enhancement for recklessly causing the risk of death. And the application notes specifically refers to transporting someone in a trunk. So why isn't that the end of the matter? Well, first of all, because there's no empirical data to show that, A, that any trunk causes more accidents, or B, that if there is an accident, that somebody would be substantially seriously injured if an accident occurs. So ultimately, there's the issue. Well, if you're rearsighted, you've got a problem if you're in the trunk, right? Exactly. If you sit on a barn. And in fact, it could be argued that if you're in the trunk and you can't move, it's likely to be a safer place to be. But there's no empirical data that says, if the trunk causes accidents, or if the trunk causes more serious injuries, than not being in the trunk. So the contract or the application note is, at best, speculative. The bottom line here is, eventually, this district is like a circuit of all cities. We're going to have to define what substantial risk is. And the argument here is, increased risk doesn't exactly equate with substantial risk. One of the problems, these two pieces are a little bit different. In one case, which accomplishes the case, is in a newer car. In a newer car, they all now, since 2008, they have a little light at the end of the trunk that says, hold me when the trunk opens. Get out. In this current case, the circuit's prior cases, that has become an important issue. In the X-PAC case, it's a problem. Well, the problem here, I guess, was that the testimony was that people didn't know about this. It was there, but they didn't know about it. That's true for the Hatchback. They were in Hatchback. They were in Hatchback. And they did. Still, this is clearly likely. They've looked up all they've got to do is see this. It's self-explanatory. If anybody out there is particularly paralyzed in a car that was built back in 2008, all you've got to do is look at the trunk of your car and you're going to snap the teeth of your tongue. If you're barreling down a highway, though, and you're having problems breathing and there's no water, you can't exactly open that and get out, though, right? It's not like a Hatchback where you can climb up into the car if you were having those problems. Is that a distinction? Maybe it's a distinction, but it's not a precondition in this case because there's no evidence that they were in the car for more than 10 or 15 minutes. They were talking for more than 10 or 15 minutes. No one claims that they were having trouble breathing. No one claims that they don't have any water. In other words, where were they stuck? What were the circumstances in which they were found? Who's going to say this? Were they meant to be in there longer than they were in there? In other words, were they intercepted and therefore cut out? But if they hadn't been intercepted, they would have kept going and been there longer. Is that the situation? I see that. It's a border checkpoint at a place called La Jolla, which is 25 miles from the border. So the intention was that they were going to be there longer than they were? Well, city passed that. It's a border checkpoint. They're usually released from the truck and put back in their vehicles. I saw that. But the checkpoints there are, in fact, 25 miles from the border. The problem is, although if you apply the reasoning of Dick Dixon, you might be right that it would be hard to show there really was a significantly higher risk. That just may have a company you know and we have a case on. That's the problem. This is what the problem is. It is that not all of us are figuring it out. The prosecution does not want C&C anymore. So you're not having these clinical tests that you would say as long as you're in complete agreement, you're there. What happens? What's happening now is what's happening. This is what I did. I took one charge. I let the government decide where they're going to go forward. And now it's up to you to decide under Ball, under Rita, exactly what the correct starting point is on the guidelines. And if they get that wrong, you've already said, and Rita says, that's the first point and you're done. So, rely upon the application code and the comment code. You're already being told that rely upon the guidelines less and less and less. And now, that also applies to the application code, which was not approved by Congress. You may rely on the guidelines less once you know what the guideline is, but you still have to know what the guideline is. And for that, you have to look at the application notes and that's just a good reason why not, right? You've got to define it. The application code tries to define what the guideline means. But whether or not after Booker or relying on the guidelines less has nothing to do with it. But each time you do that, it becomes a question of fact. And then the application becomes a question of law. And the question of facts will continually come back to this circuit. You will have to decide whether there's clear error and the application of the law will come back and each time you will have to decide to build on it. I don't understand what you're saying. I don't understand what you're saying. You know what I'm saying? Every time there's a dispute about this, it's a question about whether maybe the Trump is a risk. Is this exactly this? Is this substantial risk? There's a difference between increasing risk and substantial risk. You're going to need to define that. That's going to come before the court. I mean, I think it's before the court on this case, pretty clearly. That comes before the court. That will be coming before you time and time and time again. What is your point about that? So it comes before the court. What's your point? The point is, conventionally, you're going to have to define substantial risk. So, the name of that argument should go before the Supreme Court that said that you can apply it. You're going to have to apply that to case after case after case that comes before this court. I want to say one more really, really quick thing about Mr. Campos. His $5,000 fine, he was found guilty. I had a CTA lawyer that was appointed. He had one asset, a $40,000 car, which he owed $39,000. Mr. Stange, the greatest support he's had on the whole of the population. Mr. Stange did very good. Mr. Campos now comes back to the court for the second time on the revocation of his probation. And the application of the guidelines and support to us in this case. Let me ask you to reserve five minutes to take a picture of yourself for a moment. Thank you. Thank you. Good morning. Ma'am, please record Rosalito Gadsden, United States. Ladies and gentlemen, the US 17 Commission has decided that placing someone in the trunk of a vehicle during the commission  Hi, so do you resist leaving the trunk of a vehicle? Yes. Okay. That's it. Yes, I think that the 17 Commission has been actually quite clear about that. Placing someone in the trunk does satisfy the provision. Why? I mean, the statute has, I mean, the guideline itself says there has to be a substantial risk of death or serious bodily injury. So the question is, what's the chance of a reckless, presumably, and we know in our case someone has to be more than willing to otherwise get against cars and have substantial risk to deal with. So, if the person is not going to be in the trunk for a very short time and can get out of it if he needs to, then where does the notion come from that simply being in the trunk is more dangerous than being in the back of a car? Your Honor, I think this Court actually addressed that and very clearly articulated the reasons in Bernardo, where the Court explained that placing someone in the trunk of a car or in Bernardo, they were actually placed in a compartment under the, I believe it was the dashboard. Those are parts of a car that are simply not meant to hold a human being. Okay. They don't buy things like seatbelts, they don't, there's the safety. Well, what if the person actually did have the seatbelt of a Belki, though she was in a compartment? It wasn't Belki, Your Honor. I would dispute that it was not a seatbelt. There was a belt strapping that individual into the compartment, but it certainly wasn't there in order to prevent some sort of DLT, I would argue. But somebody in the back of a car with a seatbelt, that'll do it. No, Your Honor, that's not the government's position, that not having a seatbelt creates a substantial risk of death or serious bodily injury, although there is some argument there, but I think the Court in Bernardo clearly explained why the trunk is a position in the vehicle that is particularly dangerous because it's not meant to hold human beings. And therefore it is less insulated or structurally different or therefore what? It is all of those things. It is certainly less insulated in these two cases. These individuals were transported in the trunk of these cars in a southern Arizona summer. One of them occurred in July, one of them occurred in September. During those times of year in southern Arizona, the temperatures are extremely reached well into the hundreds on a regular basis. And in fact, the District Court in St. Lucie argued that using a first-day rule toward the winter climate is a once-in-a-lifetime rule. Hadn't it rained actually in the July instance? Hadn't it actually rained and wasn't it cold? There was some evidence that it had rained, but there was no evidence that it was cold, Your Honor. Most of your evidence gives you a rule of order for arguing about it so that it depends on the facts of the case. Your Honor, I think that the Court can find that simply placing someone in the trunk satisfies the enhancement, but I don't think the Court has to find that in this case because in both cases the District Court found the number of additional facts that do justify this enhancement. The time of year was one of those facts. In Kamlos, the District Court explicitly found as an aggravating factor the fact that these individuals were transported on the highway for, in fact, not 10 minutes, but at least 20 minutes, and there's evidence in the record of that, and that they were assuming that the defendant was driving at the speed limit. They were still traveling at a significant rate of speed, and that these facts are additional facts that support the application of the enhancement in both of these cases. So I think that the Sentencing Commission has been very clear that the fact of individuals transported in the trunk of a vehicle is a fact that is sufficient to satisfy this enhancement, but I don't think the Court has to adopt a per se rule in these particular cases because there are plenty of additional facts. For example, in the Strange case, the District Court also found that not only were District Court explicitly found they had no access to the driver, those individuals had no way to get access to the driver in case something did happen. But that's true of being in any trunk, correct? Yes, it is. But I think it was an explicit finding by the Court, so I did want to note it. Additionally, in Strange, the individuals who were transported in the trunk, they were interviewed, and they both stated that it was very, very hot in the trunk. They didn't claim that they had trouble breathing. But in Kamlos, we do have testimony from at least one of those individuals that he feared for that he would be asphyxiated in the trunk of a car being transported in September. Does it make a difference? In one of these cases, there was a way to get there was a fact. A way to get out of the trunk was some kind of indication that if you looked, you could have found, but does that make a difference? I don't think it does, Your Honor. And I think the District Court specifically considered that and also found that it doesn't matter because as the Court has already stated today, even if that individual were aware of how to get out of the trunk, which he clearly stated multiple times, he had no idea. He did not see that latch. He was never instructed on how to get out of the car. But even if he were able to somehow open, release the trunk, as the District Court found in that case, the vehicle was traveling at a high rate of speed on an interstate. And so, simply opening the trunk Well, I heard you also had a different case in which I gather actually happened to be one of these cases of being left alone in the trunk and having to get out of it. Yes. They did not get out of that trunk by being resourceful, but at least that was one that didn't have a latch on it. Or a one that didn't have a latch. It didn't have a latch. That's why I said it had a latch. We actually don't know anything about that vehicle because that was not one of the vehicles in this case. But what had happened in that situation was that those individuals had to find a tool that had been also abandoned in the back of the trunk. And somehow giving their way out of the trunk is a different danger, but it is another danger that accompanies placing people in the trunk of a vehicle. Abandonment. Why not a latch? Because presumably if they were really abandoning it, they would have found the tool in the latch. Yeah. I guess we simply can't know that. The individual who was deposed in that case was repeatedly confronted with the picture that Mr. Kaufman just showed you during those depositions and asked whether he saw it, if he knew how to use it. And he stated over and over again that he didn't know it was there. It was, in fact, nighttime when these individuals in the Kapos case were placed in the trunk of the vehicle. So he didn't see at which point were they closed and he testified that it was dark in there. He had no idea that there was a latch. Do you think, is it your position that it is more dangerous in the event of an accident to be in a concealed trunk than, for instance, to be in a hatchback type of vehicle? Yes, Your Honor. I think it is. I think the sentencing commission has said that. Why? Well, a hatchback, Your Honor, is generally open. There's a much greater possibility of being able to exit the hatchback in the event of an accident or as a trunk is closed. So that's one distinction. The fact of the matter is that we don't have a hatchbacking situation here. We have a trunk. In both of these cases, this is not a situation where there is any evidence that these individuals could have gotten out or that it's somehow analogous. And, in fact, this court in Dixon, Torres-Flores, and Bernardo have all explicitly acknowledged this commentary by the sentencing commission and talked about how trunks are different than situations like hatchbacks or like the situation in Torres-Flores where the individual was just underneath a carpet behind the driver's seat. This court has repeatedly acknowledged the distinction in those cases between situations He said you're a logical but it's just human. I don't find it terribly logical. I mean, I think it's a choice between being behind a carpet on a back seat behind your driver and being in a trunk. A trunk seems more secure to me than lying on the floor of the back of a car under a carpet but I understand we have both baseline and commentary here. Well, and I think that that difference also goes to the different types of dangers that exist for people who are locked in trunks of cars. It's not just that you're more secure that you are unsecure in the trunk of a vehicle, maybe more secure than behind a seat, but the other danger of abandonment, which we actually see in the facts of one of these cases is probably far less likely if you are simply placed behind a driver's, behind a seat in a vehicle. You may be less secure but you're probably able to, you know, if the vehicle is abandoned like it was in one of those cases. I understand that you believe there are specific facts that states require the result but besides that, what is your position with respect to Bernardo presenting per se rule? I don't think the court and Bernardo made a per se rule, Your Honor. I think the facts in that case, I think the court looked at all of the facts in that case just as the court has done in all of these trunk cases or all of these 2L1.1 V6 enhancement cases and, but I think the Bernardo held, did make a couple, did reason in a number of ways that are very, very helpful for this court and one of the ways that Bernardo did provide assistance in this, in these cases is basically to instruct the district courts to give deference to the commentary in the guidelines and that commentary states as its primary example of a situation where this enhancement ought to apply to be a situation where individuals are locked in the trunk of, or are placed in the trunk of a vehicle and transported in that manner. Yes, Your Honor, I'm happy to address the special assessment issue as well. Yes, Your Honor. There was no error by the court in assessing the special assessment in the Campos case. The district court in fact found very specific facts that justified the imposition of that special assessment. The district court adopted all of the facts in the PSR which included a comprehensive and thorough financial analysis of the defendant's financial situation. It included that the defendant did own a 2014, I think I believe it was a Chevy Camaro, and that he did have payments on that vehicle still, but the district court found that in fact his monthly expenses, including his payments on that vehicle, totaled only $790. But that he had a job, he was full-time employed, and he had an income totaling $1,840 per month. He also did $600 in savings. He was able-bodied, he was able to work, and in fact he had been employed for many, many years preceding that and had a full-time job. Is there a difference between the standard written agency for CJA counsel versus for this assessment? Do you define the terms differently? Because you're not contending that he should have paid for counsel, correct? I'm not contending that. And the district court didn't hold that, and in fact it was discussed quite a bit at sentencing, because the argument at sentencing by the defendant was the same as it is now, which is that he was indigent at the time of his initial appearance for purposes of the Sixth Amendment, and therefore the defendant argued he ought to be found indigent for purposes of sentencing. The district court soundly and appropriately rejected this argument. The district court found that at the time of his initial appearance he wouldn't have been able to retain a lawyer for purposes of the prosecution. That was a sound finding based on the affidavit the defendant submitted at that time. Because lawyers cost a lot more than paying off that fine. Exactly, Your Honor. But the finding at the time of sentencing is very different. And in fact what the court did with this special assessment was extremely reasonable financially. The district court ordered that the defendant make 34 payments of only $150 per month, and the district court gave the defendant 60 days before you would have to start payments on that. This was not an unreasonable finding. It was based on specific facts in the pre-sentence report that provided a comprehensive financial overview of the defendant's situation. And the district court found that it was appropriate and the district court committed no error in doing that.  would that be a reasonable accountability for the court? And if he was unable to pay that special assessment, then the district court would it's my understanding that the district court would need to look at that again. If, for example, he violated the terms of his probation, which included that he pay on the special assessment, and that was   to look at that again. If the defendant's financial situation were to change, then the district court would have to assess whether or not he was still indigent for purposes of paying that fine. That's not the situation before the court. As defense counsel has noted, this defendant has in fact violated his probation, but it has never been alleged that he did so because he failed to pay this fine. If that were to happen, it would be a separate facts scenario before the district court, and the district court would have to do a different analysis in looking at him. If the court has no further questions, I will exit it. Thank you. Let me go back to Bernardo. In this long line of cases where the safety application though can be considered, Bernardo dictates, states that the application though is not inconsistent or plainly erroneous reading of the guideline and deferred to its reasoning. So, we're not deferring to its reasoning. We're challenging its recognition. We're saying, provide some kind of empirical data that will back up this guideline. And there is one that is absolutely false. Wait a minute. So, what you're saying is that although Bernardo said that he was concerned, let's get back to Bernardo. I also want to say that what this map says guidelines are advisory. So, now the comment of the application is advisory to the advisory guideline. It sinks lower and lower and lower and then each time you can be faced with a different factual scenario. Once you get to the district court, once you are cleared up, once you find the appropriate guideline range or its reverse delineator, then you have to go back there. So, ultimately you're going to have to define, as I said before, substantial risk. You're going to have to kind of separate it from increased risk because increased risk doesn't mean substantial risk. Now, let me just talk a little bit about... Is it in your position, counsel, that the commentary of the application is, quote, inconsistent with and a plainly erroneous reading of the guideline? Is that your position? Well, again, because it's disregarded. It's disregarded. It's disregarded. That's what we would have to conclude, correct? That it was... I would look reading from... That's what the article tells us. The book it tells us. It disregarded the guidelines. That's fine. The first thing I need to remind you is that's what Tom said. What's happened here is the Supreme Court has given up... Excuse me. The district court did disregard the guidelines. And it gave you a plain... This is one of them. Post-conviction. Post-conviction. I'm sorry, what? Post-conviction. Right. So they disregarded the guidelines. So what's your point? The point is that Mr. Campos is now back in front of the court and doing his own design. That's Mr. Campos' fault. Mr. Campos cannot stop using bugs. He's already seen four bugs. Now he's back for a second reputation, which also feeds into why the judge doesn't have a good job anymore. He doesn't have any factory income. He's using whatever family support company he had. We're back. We're back in front of the court. Mr. Campos is doing great. Mr. Campos is doing great. So with that, let me thank the court. I want to just say one thing. This next thing I want to ask you questions is for all of you to find the last piece of this judge's final argument. We're here to touch down anything you have excused. I will support that. Any other questions? Thank you. This hearing here will be submitted.
judges: Reinhardt, Berzon, Amon